## Staunton.

## BICKLE AND OTHERS V. CHRISMAN'S ADM'X, &C.

### September 28, 1882.

1. **VOLUNTARY CONVEYANCES**—*Limitations—Case at bar.*—In 1870, C assigned *bona fide*, but for no consideration deemed valuable in law, *in trust* for his wife, two land bonds of about $7,000 each. The assignment was never recorded. In 1871, trustee invested these bonds in a farm for Mrs. C. In 1878, C having died, B, assignee of H, and other creditors of C (whose causes of action did not accrue until March, 1877), filed bill to subject the farm to payment of their debts, on the ground that the assignment of the bonds wherewith the farm was purchased, was not on consideration deemed valuable in law. Mrs. C pleaded the limitation of Code 1873, ch. 146, § 16.

HELD:

   1. The suit to avoid the assignment was barred.

   2. Under Code 1873, ch. 146, § 16, the statute begins to run *from the date of the execution of the deed*, and not, as usual under our statutes, from the time the right of action accrued.

   3. The exceptions to the operation of this statute must be found *in the statute itself*, "the doctrine of an inherent equity creating an exception where the statute makes none, being now universally exploded."

   4. Mere want of knowledge in creditor is insufficient to suspend the statute.

   5. So far as failure to record goes, the recordation of a mere assignment of *chôses in action*, is not necessary or proper under our statutes.

   6. Code 1873, ch. 146, § 20, applies to "indirect ways and means used to obstruct the suit" by the defendant in the suit wherein the statute of limitations is pleaded, and is not applicable to this case, where the obstruction was by C to the suits against him, the conclusion whereof was a necessary preliminary to the suit to impeach the assignment.

2. **IDEM**—*Idem.*—For history of the distinction between the legislation providing for the running of the statute against suits to avoid conveyances

not on considerations deemed valuable in law, and of that providing for the running of the statute in other cases, see opinion of Staples, J. *infra*, p.

3. IDEM—*Idem*—*Quære.*—Do the disabilities of infancy, coverture and the like, affect the running of § 16?

4. COMMON LAW PRACTICE—*Garnishment.*—Judgment creditor garnisheed decedent's administratrix and got judgment by default, *de bonis testatoris*. Decedent had owed a debt to the debtor of the judgment creditor, but that debtor had assigned it to B, who sued and got a judgment against the administratrix *de bonis testatoris*—

HELD:

　　1. The judgment did not bind administratrix *personally*, because it was *de bonis testatoris*.

　　2. It did not bind the decedent's estate in her hands, because it is well settled that process of garnishment at law will not lie against personal representatives.

　　3. A court of equity will not decree the payment out of the decedent's assets of a judgment obtained either by the collusion, or the neglect of the administratrix; and if *she* be precluded by the decision of this court in *Haseltine & Walton* v. *Brickey and als.*, 16 Gratt. 116, from filing a bill of interpleader, there is nothing in that decision to prevent the parties entitled to the fund from filing such bill, or otherwise showing that two creditors are claiming the same debt, and that both cannot be entitled to payment.

Appeal from decrees of circuit court of Frederick county in two suits heard together; in first of which R. G. Bickle, assignee of M. G. Harman, James A. Downing in his own right, and as administrator of John D. Harman, deceased, and others, creditors of John H. Chrisman, deceased, were plaintiffs, and Lucinda Chrisman in her own right, and as administratrix of said John H. Chrisman, deceased, and Holmes Conrad in his own right, and as trustee for said Lucinda Chrisman, were defendants. And in the second, which was a cross-bill filed by Lucinda Chrisman, administratrix, &c., in the same suit, against Mary W. Tuley, R. G. Bickle and others, defendants. These cases are sequels to *Chrisman's Adm'x* v. *Harman, &c.*, 29 Gratt. 494.

In August, 1870, John H. Chrisman, without consideration deemed valuable in law, assigned to Holmes Conrad, as

trustee for his wife, Lucinda, two bonds of Davy Richey given for land sold him by Chrisman and wife, each for $6,836.61, which assignment was never recorded. In May, 1871, Conrad, trustee, invested these bonds in a farm called "Lucky Hit," for Mrs. C. In July, 1878, Chrisman having died, Bickle, assignee of M. G. Harman, and other creditors of Chrisman, whose causes of action did not accrue before March, 1877, filed their bill to subject "Lucky Hit" to payment of their debts, on the ground that the assignment of these bonds, with which the farm was acquired, was without consideration deemed valuable in law. Mrs. C. pleaded the limitation under Code 1873, ch. 146, § 16, and the circuit court held the suit of the creditors was barred; and Bickle, &c., appealed.

The remaining facts are stated in the opinion.

*Barton & Boyd,* for appellants.

*Holmes Conrad* and *Byrd & Huck,* for appellees.

STAPLES, J., delivered the opinion of the court.

It must be assumed, for all the purposes of this case, that the assignment of the bonds by J. H. Chrisman to Holmes Conrad, as trustee, for the benefit of Mrs. Chrisman, although not upon consideration deemed valuable in law, was made in good faith and without any intent to hinder or delay creditors. This is the fair inference from the pleadings in the cause, and indeed, is conclusively shown by the paper marked as Exhibit X in the record; from which it would seem that counsel, in the court below, had agreed that the assignment was to be treated as voluntary, and for that cause only to be considered as void as to creditors. This relieves the court of all difficulty growing out of the character of the assignment and of all inquiry into its merits.

It must be further assumed as uncontroverted that the bill to impeach the assignment was not filed until the year 1878, more than five years after the date of the assignment, and more than five years after the purchase of "Lucky Hit" by Major Conrad and the execution of the deed to him as trustee for Mrs. Chrisman. The only question, then, we have to decide is, whether the statute of limitations operates as a bar to the claim of the appellants, the creditors of J. H. Chrisman.

The provisions of the statute governing the case is found in the 16th section of chapter 146, Code 1873, and is as follows:

"No gift, conveyance, assignment, transfer, or charge which is not on consideration deemed valuable in law, shall be avoided, either in whole or in part, for that cause only, unless within five years after it is made suit be brought for that purpose, or the subject thereof, or some part of it, be distrained, or levied upon, by or at the suit of a creditor as to whom such gift, conveyance, assignment, transfer or charge is declared to be void by the second section of chapter 114."

The counsel for appellants rely upon several grounds to take this case out of the operation of this section, or which, at least, as they allege, prevent or suspend the running of the limitation. One of these is, that with respect to all the claims in controversy, a right of action had not accrued to either of the appellants until more than five years after the date of the assignment; and as they brought suit within a very short time after the said cause of action had accrued, the lapse of five years does not bar the remedy. It will be seen that the point made is, that the limitation does not begin to run till there is a right of action. And this is undoubtedly correct with respect to almost all our statutes of limitation. For example, if we turn to the first section of chapter 146, we find it there provided that no person shall

bring suit for the recovery of land except within a certain designated number of years after his right to bring such action shall have first accrued. And in the eighth section it is provided that any action to recover money· which is founded on any award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the suit shall have first accrued.

And so on, through all the numerous provisions relating to the limitation of actions, the running of the statute is made to depend upon the accruing of the right of action. The exceptions to, or departure from, this rule of limitation are found in section 17 of chapter 146, which declares that a bill to repeal a patent must be brought within ten years after its date; and in the section now under consideration relating to suits to set aside voluntary conveyances or gifts, the only case in which the provisions relating to the repeal of patents has been the subject of consideration by this court, is that of *Godwin* v. *McClure*, 3 Gratt. 291. In that case it was claimed that the patent had been obtained upon false suggestions, and circumstances were relied on to establish the existence of a trust, to take the case out of the operation of the statute. But Judge Allen said the language was express that no patent could be repealed after the lapse of ten years. It is possible that the legislature, after that period, designed to cut off all inquiry into the validity of the patent, except in cases of infancy, coverture, or the like.

If these disabilities also apply to suits under the 16th section, to set aside voluntary deeds, it is very clear there are no other restrictions upon the running of the statute. The language is very explicit, that the conveyance, gift or assignment shall not be avoided, in whole or in part, unless within five years after it is made suit be brought for that purpose; or unless the subject, or some part of it, be distrained or levied upon at the suit of a creditor.

The reasons, I think, influencing the legislature in adopting this limitation, are sufficiently obvious. It had long been a controverted question among courts and judges whether a voluntary settlement upon a wife or child was good against existing debts, where the settler was at the time in a condition to make such settlement without injury to his creditors.

On the one hand, it was insisted that every voluntary assignment by a person indebted at the time is presumed to be fraudulent, and no circumstances could permit these debts to be affected by such conveyance.

On the other hand, it was said, with great force, that if a person in prosperous circumstances makes advances to his children adapted to their wants and justified by his means, leaving ample funds for the payment of his debts, there is no justice or propriety in treating his conduct as fraudulent in behalf of creditors who have delayed the prosecution of their demands until the debtor's means have been exhausted.

The former view was maintained by Chancellor Kent and Judge Stanard; the latter, by Judge Baldwin and Mr. Justice Story, with signal ability.

There is no doubt the great weight of authority, as well as of the argument, was with the last named judges. See Story E. J., § 358; *Hutchison* v. *Kelly*, 1 Robinson's Reports, 131.

The legislature of Virginia, at the revisal of 1849 and 1850, adopted the views of Judge Stanard, and enacted the provision contained in the second section of chapter 114, Code of 1873, which declares that every conveyance, gift or assignment, not upon consideration deemed valuable in law, shall be deemed fraudulent as to existing creditors. The effect of this provision is to declare every advancement made to a wife or child void as to creditors, no matter how fairly made, how insignificant the gift, how great the for-

tune of the donor. And if he shall subsequently become insolvent, the property may be pursued in the hands of the wife or child and made liable to the claims of creditors, unaffected by the lapse of time or limitation. The practical result would have been that no man owing debts could safely make a settlement upon any of his children, and no child could receive property from a parent in debt at the time, without being required at some remote period to account for it. No plans could be formed by a child with reference to such property, and no credit could safely be given him upon the faith of its apparent ownership.

Common justice, the repose of families, and the security of property, required that some limitation should be imposed upon the rights of creditors to proceed in such cases. And, accordingly, the legislature declared that after the lapse of five years, the conveyance, gift or assignment should be unassailable. If the creditors of the settler or donor did not think proper, within that period, to assert their demands, they should be forever excluded.

And even though there might be some whose rights of action could not accrue within five years, it was deemed better that they should be without remedy, than that the parties concerned should be held liable for an indefinite period to the claims of the donor's creditors. The legislature, it is probable, considered that the cases would be rare in which the statute could be successfully invoked against the demands of creditors; for if the donor was considerably indebted at the time, or if the gift was grossly disproportionate to his means, leaving but a scanty proportion for the payment of debts, the presumption of actual fraud would almost necessarily arise.

But whatever may have been the motives or reasons, the legislature has failed to engraft upon the statute the restrictions or conditions attached to the operation of the different statutes of limitations already referred to. Is it

competent for this court to do so upon any consideration of public policy, or of injustice or hardship to creditors?

In *Demarest* v. *Wynkoop*, 3 John. C. Re. 142, Chancellor Kent said: "The doctrine of an inherent equity creating an exception where the statute creates none, is now universally exploded." "There is no dispensing power," says Mr. Justice Story, "which the courts possess, arising from any cause whatever. Where the legislature gives an extension of time in cases of infancy, coverture, and the like, it is an assumption of legislative authority to introduce any other." See also *McIver* v. *Ragan*, 2 Wheat. 29; Angel on Limitation, §§ 61, 201, 485; 6 Otto, 704.

In *Beckford* v. *Wade*, 17 Vesey Reports, 87, Sir William Grant adverted to the case of a defendant absent or out of the realm, before statute of Queen Anne. He said a plaintiff out of the realm might prosecute a suit by attorney; but when the defendant is out of the realm, it is very hard to call upon the plaintiff to institute a suit, which, in most cases, must be wholly fruitless, and yet until this statute of Queen Anne was made, that case formed no exception, and the statute of limitation barred the action.

It has also been held that infants, like other persons, would be barred by an act limiting suits at law, if there was no saving clause in their favor. Angel on Limitations, p. 205. Indeed, the principle seems to be settled that unless there can be found in the statute itself some ground for restraining it, it cannot be restrained by arbitrary additions or amendment. Unless, therefore, we are prepared to limit the operation of 16th section by some sort of judicial legislation, we must hold that the lapse of five years is an absolute bar to a suit to impeach the conveyance, gift, or assignment, unless, indeed, the plaintiff is laboring under some disability expressly provided for under the general statute of limitations.

It has been said, however, that the appellants could not

have impeached the assignment, because not being recorded,. they were not apprised of it, nor had they the means of ascertaining its existence.

I do not understand that any charge of concealment, fraudulent or otherwise, is made, but merely that the fact of the assignment was unknown to the creditors. So far as the failure to record is concerned, it is sufficient to say that the recordation of a mere assignment of *choses* in action is not necessary or proper under our statutes, as the parties were no doubt advised by the learned counsel who acted both as trustee and adviser in affecting the arrangement.

The conceded fact, that the assignment was made in good faith is inconsistent with the supposition of any attempted concealment. The further fact, that after the sale of the land to David Richey, counsel of the highest respectability were employed to use the proceeds in payment of Mrs. Chrisman's creditors; that the latter were notified to come forward and present their claims, and they were in fact paid, so far as they were known, is most persuasive evidence that neither fraud nor concealment were contemplated in the assignment of the bonds.

I have not been able to find any authority, and none was cited at the bar, to the effect that the mere want of knowledge on the part of the creditor is sufficient to suspend the operation of the statute of limitation. There are numerous decisions which hold to the contrary. In *Foster* v. *Rison*, 17 Gratt. 345, the court said: " The mere fact that Marston Foster was ignorant of the existence of any debt which may have been due him by J. W. Foster, until within five years before the institution of the suit, will not be sufficient to repel the bar of the statute. To have that effect, such ignorance must proceed from the fraud of J. W. Foster, which ought to be plainly charged by the pleadings and clearly shown by the proofs."

This principle is so well established it is unnecessary to

do more than refer to some of the authorities. *Short* v. *McCarthy*, 3 Barn. and Al. 626; *Granger* v. *George*, 5 Barn. and Cress. 149 (11 Eng. C. L. R.); 3 Parsons on Contracts, new ed., p. 91; 1 Robinson's Prac. 635.   In the case before us, the fact of a fraudulent or wilful concealment, or even an intention to conceal, is not averred in any of the pleadings, and is entirely unsupported by the evidence.

It is further urged in the argument that John H. Chrisman in his lifetime, and Mrs. Chrisman after his death, by unjust and urgent defences, delayed the hearing of the suits brought to enforce the payment of the negotiable note, and thus prevented the appellants from filing their bill to impeach the assignment; and in such case the operation of the statute is suspended under the provisions of the 20th section, chapter 146, which declares that if the defendant, by leaving the State, or by other indirect ways or means, obstructs the prosecution of the action, the statute does not run during the period of such obstruction.   Now, it may be a question whether this section does not apply wholly to actions against the party who obstructs the suit against himself for the same cause of action as that to which, when he is sued, he pleads the statute.   To a plea of the statute in answer to a bill to set aside the assignment, it is a matter of very grave doubt whether it is any proper defence to show that the recovery of the note was obstructed.   1 Rob., new Prac. 621.

However that may be, it is very clear that if J. H. Chrisman improperly denied his endorsement of the note, and thus delayed a recovery against him, Mrs. Chrisman cannot be held responsible for it, nor can her rights under the assignment be affected by it.

After the death of Mr. Chrisman in 1872, it was the duty of Mrs. Chrisman, as administratrix, to defend the suit against her by White and Harman.   The history of those suits in the circuit court and this court, shows there was

nothing incompatible with her rights and duties personally, or as administratix, in contesting a recovery in both cases.

No authority can be found, I imagine, for the proposition that the honest though mistaken defence of a suit will prevent the operation of the statute of limitation.

In *McIver* v. *Ragan*, 2 Wheat. 29, Chief Justice Marshall said : " It has never been decided that the impossibility of bringing a case to a successful issue from causes of uncertain duration, though created by statute, shall take a case out of the operation of the statute, unless the legislature shall so declare its will." *Bank of the State of Alabama* v. *Dalton*, 9 Howard, 522; Angel on Limitation, §§ 61, 201, 218, 485; 11 Otto, 135; 2 Leigh, 347. The words, " indirect ways or means," used in our statute, refer exclusively, I imagine, to the employment of means either intended to delay the plaintiff in the prosecution of his suit, or the effect of which may be wrongfully to obstruct him in the assertion of his rights. The various cases decided by this court prior and subsequent to the passage of the statute, show the grounds and reasons of the enactment. It is not to be supposed that the legislature designed to deprive a party of the benefit of a limitation because, in the just exercise of his rights as a suitor, he has conscientiously defended a claim asserted against him, however unfounded or mistaken his defence may be. 1 Rob. new Prac. 620, 621. To give such a construction to the statute, would be to extend its operations far beyond the spirit and purpose of the enactment, and to introduce new rules at war with our whole system of legislation.

All that has been heretofore said applies as well to the claim of Mrs. Tuley as to those of Bickle and other creditors She, alike with them, is barred by the statute from impeaching the assignment to Mrs. Chrisman. This being so and the estate of John H. Chrisman being insolvent, it is perhaps not very material or important to inquire whether

the learned judge of the circuit court did, or did not err in holding that Mrs. Tuley is not entitled to enforce her claim against the estate of J. H. Chrisman. As the question is, however, before us by appeal, it is perhaps our duty to consider and decide upon it.

It seems that Mrs. Tuley, as a judgment creditor of Maj. Harman, caused to be issued process of garnishment against Mrs. Chrisman, as administratrix of J. H. Chrisman. Mrs. Chrisman failed to appear and show, as she ought to have done, that the debt due Harman had previously been assigned by him to Bickle. Mrs. Chrisman's excuse is that she did not then know of the assignment. Whether this be true or not, is not necessary here to inquire. The result was that Mrs. Tuley, upon her process of garnishment, obtained a judgment, by default, against Mrs. Chrisman, as administratrix, for the very same debt now claimed by Bickle under the assignment by Harman. The learned judge of the circuit court was of opinion that Bickle was entitled to priority of payment, and that Mrs. Tuley had failed to establish any claim against the estate of J. H. Chrisman, on account of or by reason of said judgment, and her claim is therefore disallowed.

The correctness of this decision is not questioned, so far as Bickle's right of priority is concerned, and Mrs. Tuley is placed in the very unenviable position of asserting a right to recover the same debt which it is admitted has been assigned to Bickle. Her counsel insists that the judgment upon the process of garnishment cannot be collaterally called in question; that it is conclusive against the estate of J. H. Chrisman; that Mrs. Tuley is entitled to payment out of the assets, and if creditors, or other persons interested, sustain any loss on account of Mrs. Chrisman's *devastavit*, they have their remedy against her and her sureties upon her official bond. It is admitted that Mrs. Chrisman cannot be held personally liable, for the judgment against her

is *de bonis testatoris,* but it is clear that if the claim now asserted for Mrs. Tuley be sustained, the practical result will be to hold Mrs. Chrisman personally liable under a judgment against her as administratrix.

The question we have to decide, however, is whether a court of equity will decree out of the assets of the estate payment of a judgment thus recovered.

The counsel for Mrs. Tuley rely mainly upon the case of *Haseltine and Walton* v. *Brickey et als.,* 16 Gratt. 116, in which it was held that where the attaching creditor and assignee both recover judgment against the estate of an absent defendant without objection on his part, he cannot, after the judgments are obtained file a bill of interpleader against them to require them to litigate their respective rights to the fund, but he is liable to pay both judgments. This decision was based partly upon the ground that the garnishee was guilty of gross negligence in permitting personal judgments to be rendered against him, when he had the fullest opportunity of making defence, and partly on the ground that a bill of interpleader would not lie after judgment. A party litigant may, of course, do with his own as he deems best and a court of equity will not relieve him of the just consequence of his own gross neglect in failing to make defence when the opportunity is afforded him.

But I do not understand that the same inexorable rule applies when the effort is made to appropriate *trust funds,* in violation of the rights of third persons. No rule is better settled in Virginia than that a personal representative cannot, by his promise, revive a debt barred by limitation, nor can he create a cause of action against the estate where none before existed. He cannot do so directly or indirectly, neither by confession of judgment nor by his default. In every such case I imagine it would be competent for a court of equity, in the administration of the assets, to discard a claim acknowledgedly having its origin in the *gross neglect* of the personal representative.

If Michael Harman, after the assignment to Bickle, had sued Mrs. Chrisman for the same debt, and recovered judgment against her, as administratrix, by default, it will not be seriously maintained that a court of equity would decree payment to both Bickle and Harman.

Mrs. Tuley, as a judgment creditor of Harman, stands in the shoes of the latter, subject to all the equities of third persons against him, and bound by the assignment to Bickle to the same extent as Harman himself is bound. When a *devastavit* has been actually committed by a fiduciary, a court of equity endeavors, as far as possible, to afford redress by restoring the parties injured to their former condition. Here the application is to require the administratrix to commit a *devastavit* by turning over the assets to a party who confessedly never had any cause of action against the estate, and whose only claim rests upon a judgment recovered through the gross neglect of the administratrix.

The conclusive effect sought to be given to the judgment of Mrs. Tuley is founded on a misconception. Garnishment is purely a statutory proceeding, and cannot be enforced beyond the statutory authority under which it is resorted to. And, as has been said, it can have no aid from the volunteered acts of the garnishee. Such acts will be regarded as void, so far as they interfere with the rights of third parties. A garnishee, in the eyes of the law, is a mere stakeholder, a custodian of the effects in his hands. The garnishment is an attachment of such effects, differing in no essential particular from attachment by levy, except as is said that the plaintiff does not acquire a clear and full lien upon the specific property in the garnishee's possession, but only such a lien as gives him the right to hold the garnishee personally liable for it or its value. See Drake on Attachment, §§ 450, 456.

Under our statutes, it is simply the process by which a

creditor enforces the lien of his execution against the effects of his debtor in the hands of the garnishee, and the statute plainly contemplates only a personal judgment in such case, based upon proof, or rather upon the confession of the garnishee, that he has effects in his hands belonging to the debtor. It is competent, of course, for the garnishee to escape all personal liability by surrendering the specific effects in his hands to be sold under the order of the court. As the judgment is personal, no one can be affected or prejudiced by it but the garnishee himself. It would seem to be too clear for argument that in such a proceeding the garnishee cannot, by his silence or his direct confession, authorize a judgment against property in his hands, as trustee, or held by him in a fiduciary character. And if such judgment should be erroneously given, it certainly will not be held as conclusive as against the *cestui que trust*, who was no party to the proceeding.

If the creditor thinks proper to take a judgment against the garnishee himself, and the latter interposes no objection, no just cause of exception can be had; but when he attempts thus to sequester the property of third persons, held by the garnishee as a fiduciary, his proceeding is neither within the letter nor the spirit of the statute. It is well settled that process of garnishment at law will not lie against executors and administrators. The effect of such proceedings is to give undue priority to creditors and to delay and embarrass the settlement of the estate, and transfer from the proper forum the due and proper administration of the assets.

It was the duty of Mrs. Chrisman to appear and make this defence in answer to the summons against her, as well as to make known the previous assignment of the debt to Bickle.

If the assignment was unknown to her, or if she did not choose to insist upon it, her failure to do so cannot preju-

dice those who are entitled to the assets or preclude them from showing the fact.

Although, under the decision of this court, as already cited, the garnishee himself may be precluded from filing a bill of interpleader, there is nothing in the decision, or in the opinion of the court, which leads to the idea that parties entitled to the fund may not file such bills, or otherwise show that two creditors are claiming the same debt, and that both cannot be entitled to payment.

There are other questions arising upon these records, but it is not deemed necessary to discuss them. After a careful examination, I am satisfied that none of the errors assigned are well taken, and that the decrees of the circuit court must be affirmed.

DECREE AFFIRMED.