# Wytheville

LOUISE RICE MORRISS v. SHERLOCK BRONSON AND T. JUSTIN MOORE, RECEIVERS, ETC.

June 8, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*George E. Allen* and *John B. Boatwright*, for the appellant.

*Tucker, Bronson, Satterfield & Mays*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

This appeal brings under review a decree declaring transfers of personal and real property by Dr. G. L. Morriss to his wife, Louise Rice Morriss, fraudulent as to his creditors.

The conceded facts are that Cameron Dunlop, W. A. Crutcher and G. L. Morriss, for a number of years, were engaged in the leaf tobacco business as partners, trading as Dunlop and Company. The partnership was dissolved in September, 1930. When working capital was needed, the company borrowed money from the American Bank and Trust Company of Richmond. In October, 1929, the partnership was indebted to the American Bank and Trust Company in the sum of $22,000, evidenced by three notes made by Dunlop and Company and endorsed by the individual partners.

Dr. G. L. Morriss, in October, 1929, executed the following deeds: (1) A deed conveying to his wife ten tracts of land totaling 1,412 acres and a one-sixth undivided interest in eleven other tracts totaling 6,454¼ acres. (2) A deed conveying to W. A. Rice, Trustee, for the benefit of Louise L. Morriss, a minor child of Dr. Morriss, the Argyle Apartment Building, located at 1709 Hanover avenue, Richmond, Virginia. (3) A deed conveying another apartment house in the city of Richmond to some third party. About the

same time he transferred eighty shares of Buckingham Tobacco Company, Inc., stock to his wife, Louise Rice Morriss, four·shares to A. R. Smith and retained two shares. The two apartment houses in the city of Richmond are not involved in this litigation as the equities of redemption conveyed to Dr. Morriss proved to be valueless.

On November 18, 1929, Dunlop and Company obtained an additional loan of $20,000 from the American Bank and Trust Company on a note executed by the company and endorsed by the individual partners. These notes were curtailed and renewals made from time to time. At the time this suit was instituted, the balance due by the partnership on these obligations was $20,000, for which sum the court entered a judgment against each of the partners. Louise Rice Morriss appealed from so much of the decree as declared the transfers of property to her to have been made with the intent to hinder, delay and defraud the creditors of G. L. Morriss.

While appellant assigns three errors to the ruling of the trial court, each of them is based on the refusal of the court to sustain the plea of the statute of limitations. The statute, section 5820, provides:

"No gift, conveyance, assignment, transfer or charge, which is not on consideration deemed valuable in law, or which is upon consideration of marriage, shall be avoided in whole or in part for that cause only, unless within five years from its recordation, if recorded under a law providing for its recordation, and if not so recorded within five years from the time the same was or should have been discovered, suit be brought for that purpose, or the subject thereof, or some part of it, be distrained or levied on by or at the suit of a creditor, as to whom such gift, conveyance, assignment, transfer, or charge, is declared to be void by section fifty-one hundred and eighty-five." (Code 1887, section 2929).

It is conceded that, if the transfers in question were merely voluntary, and not made for the purpose of hindering, delaying or defrauding creditors, the statute would

apply, as suit was not begun within five years from the date the deed was recorded, or within five years from the date the personal property was transferred.

The principles to be applied in a contest between the creditors of the husband and the wife over transfers by him to her are firmly established in this jurisdiction. Justice Eggleston, in *Fowlkes* v. *Tucker,* 164 Va. 507, 511, 180 S. E. 302, reaffirms them and quotes the language used in *Robinson* v. *Bass' Adm'r,* 100 Va. 190, 193, 40 S. E. 660, thus:

"They (the rules) are, that transactions between husband and wife must be closely scrutinized, to see that they are fair and honest and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors; that in a contest between the creditors of a husband and wife, the burden of proof is upon her to show by clear and satisfactory evidence the *bona fides* of the transaction, and in all such cases the presumption is in favor of the creditors, and not in favor of the title of the wife."

Appellant contends that these principles do not apply to a mere voluntary conveyance, citing *Bickle* v. *Chrisman's Adm'x,* 76 Va. 678. This contention is sound. A mere voluntary conveyance or transfer of property is governed by the principles incorporated in Code, section 5185. The rules, quoted with approval in *Fowlkes* v. *Tucker, supra,* are used to determine the kind of a conveyance that is under investigation.

Prior to the adoption of the provisions now incorporated in Code, section 5185, it had been a controverted question whether a voluntary settlement upon a wife or child was good against existing debts, where the settler was at the time in condition to make such settlement without injury to his creditors. One school of thought maintained that every voluntary assignment by a person indebted at the time should be presumed to be fraudulent, and no circumstances should permit these debts to be affected by such conveyance. Another school maintained that if a person in prosperous

circumstances made advancements to his children adapted to their wants and justified by his means, leaving ample funds for the payment of his debts, there was no justice or propriety in treating his conduct as fraudulent in behalf of creditors who delayed the prosecution of their demands until the debtor's means had been exhausted.

The Code revisors of 1849 adopted the former view and enacted what is now section 5185, declaring all such conveyances, gifts or assignments to be fraudulent as to existing creditors, and then, by section 13 of chapter 149 of that Code, limited the right of existing creditors to avoid the transfer to a period of five years. This provision, with certain additions, is now section 5820 of the present Code.

In discussing these views Judge Staples, in *Bickle* v. *Chrisman's Adm'x, supra,* said: "Common justice, the repose of families, and the security of property, required that some limitation should be imposed upon the rights of creditors to proceed in such cases. And, accordingly, the legislature declared that after the lapse of five years, the conveyance, gift or assignment should be unassailable. If the creditors of the settler or donor did not think proper, within that period, to assert their demands they should be forever excluded." In that case it was conceded that the conveyance under consideration was voluntary, and the court held that the five-year limitation applied.

The first question to be determined in this case is the kind of conveyance we are investigating. The conveyance states on its face that $10,000 cash was the consideration paid for the property. Both Dr. and Mrs. Morriss testified that $10,000 was not paid for the property, and, in one part of their testimony, they said that the consideration for the conveyance was that, some time prior to 1929, Mrs. Morriss had permitted her husband to obtain a loan of $6,000 on her Mohawk farm, which money he had used in his business, but at the time did not agree to repay the sum to Mrs. Morriss. This transfer of the $6,000 did not create the relation of debtor and creditor between the husband and

the wife, as Dr. Morriss made no promise at the time to repay the sum to his wife.

In *Sledge* v. *Reed,* 112 Va. 202, 70 S. E. 523, the following is said (page 524) : "The burden is upon the wife to show that the original transaction represented a loan by her to the husband, and a contemporaneous promise on his part to pay the debt; otherwise, what was originally a gift to aid the husband in business, and used by him as a basis of credit, could subsequently, when he became involved, be converted into a debt to his wife, and thus perpetrate a fraud upon his creditors with the utmost facility and impunity."

In view of this principle, appellant could not support that part of her answer in which she alleged that she was a purchaser of the property for value, hence on appeal she abandoned this contention, and urged, contrary to the statement made in the deed and contrary to the theory of defense stated in her answer, that the transfers were merely voluntary and, therefore, came within the provisions of Code, section 5820. The deed is not what it purports to be, namely, a conveyance upon a consideration deemed valuable in law. Appellant, being driven from this contention, now urges upon this court that it is a mere voluntary conveyance.

The evidence shows: (1) That this is a contest between creditors of the husband, at the time he made the transfers to his wife, and the wife; (2) that the consideration stated in the deed to be $10,000 in cash was fictitious; (3) that the husband at the time divested himself of all his property except the interest in the partnership, two shares of stock and forty acres of land, the last two items valued by him at $660; (4) that, at the time, he owed directly and indirectly the sum of $37,300; (This sum included $22,000 due by the partnership to the American Bank and Trust Company, $6,000 to the Federal Land Bank secured by a mortgage, $5,000 to Mrs. C. R. Roberts and $4,300 to the American Agricultural Chemical Company and a local merchant. The total indebtedness stated does not include the liens on the

two apartment houses in Richmond, which were later sold either under a prior deed of trust or for the amount due lien-holders. Neither of these pieces of property was worth more than the liens on them at the time of the transfer.) (5) Dr. Morriss lacked funds to meet pressing creditors as evidenced by the fact that he made unsuccessful attempts to borrow twenty-five to thirty thousand dollars.

These are facts and circumstances usually held to be indicative of an intent to hinder, delay or defraud creditors. Appellant contends that these *indicia* of fraud are not conclusive in this case because: (a) at the time the transfers were made, Dr. Morriss was sick and did not expect to live; (b) Dr. Morriss thought the assets of the partnership were ample to take care of partnership debts; (c) appellant had no knowledge, nor was she put upon inquiry, as to the amount of the partnership debts and, therefore, did not participate in the fraudulent intent.

It is conceded that, at the time Dr. Morriss divested himself of title to practically all of his property, he was seriously ill. Dr. Morriss testified that, in view of death, which he thought was imminent, he desired to settle his financial affairs and "to dispose of my stuff in a way that would not cause my wife and child any trouble," and to make "adequate provision for my wife in case of my death."

██ It is evident that Dr. Morriss' motive in making the transfers in question was to relieve his wife of the trouble and expense of administering on his estate and to make generous provision for her. Whether sick or well, it is the duty of a debtor to be just before being generous. He has no right to provide for members of his family at the expense of his creditors. When such debtor makes a voluntary settlement upon loved ones and does not retain a sufficient amount of his property to pay his debts and perform his contracts, "justice requires that the property should be followed into the hands of the donee by the creditor." The fact that Dr. Morriss made the transfers while he thought he was on his death bed is not sufficient to rebut the presumption of fraud raised from the facts and circumstances stated.

It appears that in August, 1929, Dr. Morriss attended a meeting of the individuals composing the partnership of Dunlop and Company. At this meeting a financial statement of the company was exhibited. This statement shows that the assets of the partnership as of that date totaled $18,901, and that the liabilities were $22,308. The tobacco on hand purchased for resale was carried in the inventory at $14,989, the cost to the company. Mr. Crutcher testified that Mr. Dunlop, who was the active member of the partnership in buying and selling tobacco, informed the partners that the company would have to take a substantial loss on this tobacco. Dr. Morriss denied that any such statement was made in his presence, and stated that, notwithstanding the statement showing that the company had lost more than $3,400, he expected to make a substantial profit out of the partnership business. There was other testimony tending to show that the partnership had made no profit since 1926, and that the tobacco on hand was badly damaged, and that the market value was considerably less than the cost price. While Dr. Morriss stated that he expected to make a profit out of this tobacco, he made no further inquiry into the condition of the partnership and continued to renew the notes when presented and, indeed, after the transfers here in question were executed, he endorsed a note for the company to borrow an additional $20,000. While Dr. Morriss may have hoped to make a profit, no substantial evidence was introduced on which he could have reasonably based such a hope.

This is not a case in which the grantor ascertained the amount of his existing obligations, retained sufficient property with which to meet them, and then openly made a voluntary conveyance to his wife of the remaining property; on the contrary, Dr. Morriss did not, according to his own testimony, inform his wife of the full amount of his obligations as a member of the partnership, and stated on the face of the deed, contrary to the facts, that valuable consideration passed to him from his wife.

In *Morrisette* v. *Cook & Bernheimer Co.*, 122 Va. 588, 594,

95 S. E. 449, this is said (page 450): "The evidence here, however, shows much more than a conveyance which is merely voluntary; that is, we have a conveyance to his wife from a grantor who was indebted at the time, which was in fact voluntary though it falsely purported to be for a valuable consideration, * * *.

"In *Greer* v. *O'Brien, supra* (36 W. Va. 277, 15 S. E. 74), which is among the cases relied on by the appellant, this is said: 'This proposition must be taken in connection with the facts of the case itself, as set out in the opinion, which disclose that the deed assailed purported to be for valuable consideration, and was not on its face a voluntary conveyance; thus obviously indicating on the part of the grantor an intent to withdraw from the reach of existing creditors all the property so conveyed. As applied to the case then in hand, therefore, the proposition is correct, because the misrepresentation on the face of the deed supplied that "additional circumstance" of covin which, as we have seen, was insisted upon in *Lockhard* v. *Beckley, supra* (10 W. Va. 87), in which it was held that mere indebtedness at the time of making a deed, voluntary on its face, is not a circumstance to impeach the deed, except when accompanied by other badges of fraud.'"

Appellant contends that, in order to vitiate a conveyance on the ground that it was made with a fraudulent intent, the grantee must have had notice of grantor's intent, or knowledge of facts sufficient to put a reasonably prudent person on inquiry.

All of the cases cited by appellant to support the contention are cases in which the grantee had paid valuable consideration for the transfer or conveyance. In this case both Dr. and Mrs. Morriss testified that it was the purpose of Dr. Morriss, in executing the conveyances, to divest himself of practically all of his property for the protection of his wife. They discussed with each other the $5,000 due to Mrs. C. R. Roberts and the $4,300 subsequently paid to the fertilizer company and the local merchant. While Mrs. Morriss denied any knowledge of the debts owing by the

partnership, she testified that she knew Dr. Morriss had some responsibility in connection therewith, but that she made no inquiry as to the nature of that responsibility, or the amount of indebtedness. Dr. Morriss was confined to his bed for eight months and to the house for nearly two years, during which time he continued to endorse renewal notes for the indebtedness due by the partnership to the American Bank and Trust Company. Mrs. Morriss testified that during this time, she was so uneasy and wrought up over the condition of Dr. Morriss that she "slept right by him for four months and the only way that I could tell he was alive was to keep my hand on his arm," and that he made the transfers "as a protection to me and my daughter, who was about fourteen or fifteen years old. He wanted to fix it up so that we would be provided for." Under these circumstances it seems unusual that Dr. Morriss should have, during this period, at various times, executed renewal notes for as much as $40,000, and his wife should continue to be ignorant of the existence of any of these obligations.

By her own testimony Mrs. Morriss is a donee and not a purchaser for value. Section 5184 of the Code provides that "every gift, conveyance, * * * given with intent to delay, hinder, or defraud creditors * * * shall * * * be void." The statute protects innocent purchasers for value thus: "this section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor."

The transfers themselves and the circumstances under which they were executed raise a strong presumption of an intent to hinder, delay or defraud creditors, which cast upon the wife the burden of establishing by clear and convincing proof the *bona fides* of the transaction. The trial court held that the illness of Dr. Morriss and the desire to provide for his wife and daughter were not sufficient, under the circumstances of this case, to overcome the presumption in favor of creditors.

We find no error in the decree.                    *Affirmed.*