# CHARLESTON.

## GLASCOCK v. BRANDON.

Submitted January 24, 1891.—Decided March 11, 1891.

1. DISMISSION—MOTION TO SET ASIDE—PRACTICE.

A plaintiff may, in general, obtain an order to dismiss his own bill with costs as a matter of course; and, such dismissal on such motion of plaintiff having been entered, a motion by a defendant, made at the same term, to set aside such order, does not of itself have such effect, neither does it have the effect to suspend the operation of such order. It can not be rescinded or suspended by any such indirect method.

2. DOWER—POST-NUPTIAL SETTLEMENT—RELINQUISHMENT OF DOWER—LIMITATION OF ACTIONS—FRAUD.

If a married woman relinquishes her contingent right of dower in land, under a definite promise, verbal or written, made at or about the time by her husband, that other property shall be settled on her in lieu of or as compensation for the interest thus relinquished, such settlement will be good against creditors having no specific lien, though made after such relinquishment. But if the value of the property settled exceeds the value of the dower relinquished, the deed, should be set aside as to the excess, and supported as to the residue. Yet the impeaching creditor, in order to set it aside as to such excess, must, under our statute, bring his suit within five years, unless he shows that the settlement was fraudulent in fact, as distinguished from being merely fraudulent in law.

*J. H. Woods* and *S. V. Woods* for appellant, cited 94 U. S. 580; 33 W. Va. 388; 69 Md. 348; 76 Va. 663; 78 Va. 460; 2 Min. Inst. 610; 24 W. Va. 441; 27 W. Va. 206; 3 Md. Ch'y 106; 10 W. Va. 321; 80 Va. 311; 84 Va. 726; Bump. Fraud. Conv. 283, 285, 289; Big. Fraud. 199; Wait Fraud. Conv. §§ 329, 239; 10 W. Va. 87; 1 Sto. Eq. § 355; 61 Md. 451; 3 Md. Ch'y 106; 33 Md. 587; 51 Md. 453; 22 W. Va. 365; 40 Md. 424; 45 Md. 291; 3 Gratt. 33.

*Dayton & Dayton* and *T. P. R. Brown* for appellees, cited Dan. Ch'y Pr. (Am Ed.) 795; 9 Paige Ch'y 247; 8 Paige Ch'y 79; 2 Johns. Ch'y 475; 1 Ves. Jr. 401; 18 Barb. 590; 4 Myl. & C. 194; 13 Fed. Rep. 112; 136 Mass. 192; 4 Paige

Ch'y 227 ; 25 How. Pr. 358; Walk. Ch'y 360 ; 1 Dick. 280 ;
4 Munf. 207 ; 7 Abb. (U. S.) 39 ; 1 Hilt. 265 ; 14 How. Pr.
287 ; 13 How. Pr. 258 ; 36 How. Pr. 240 ; 76 Va. 63 ; Id.
766 ; 24 W. Va. 279 ; 133 Mass. 141 ; 7 Peck 541 ; 18 Wall.
141 ; 3 Paige Ch'y 440 ; 53 N. Y. 303 ; 30 Hun. 559 ; 11
Hun. 224 ; 5 Hun. 557 ; 56 Wis. 188 ; 15 Fla. 155 ; 26 N. J.
Eq. 376 ; 17 Ill. 560 ; 8 B. Mon. 326 ; 11 B. Mon. 175 ; 5 B.
Mon. 298 ; 4 Metc. (Ky.) 59 ; 21 Ind. 398 ; 18 Hun. 474 ; 32
Ohio St. 327 ; 17 Mo. 564 ; 2 Kent. Comm. 164 ; Sto. Eq. §§
1372–3 ; 10 Pet. 594 ; 10 Ves. 164 ; 46 Ohio St. 407 ; 4 Munf.
251 ; 6 Munf. 1 ; 1 Rand. 219 ; 2 Rand. 563 ; Gilm. 209 ; 29
W. Va. 1 ; 15 W. Va. 444 ; 23 W. Va. 653 ; Code c. 104, s.
14 ; 10 S. E. R. 382 ; 10 W. Va. 321.

HOLT, JUDGE:

This was a suit in equity brought in the Circuit
Court of Barbour county in April, 1876, to set aside a deed
as fraudulent. All the defendants appeared and demurred
to the bill. On November 13, 1876, plaintiff having joined
in the demurrers, they were argued and overruled. De-
fendant E. T. Brandon having died on 10th May, 1878, the
suit was ordered to stand revived against his administrator.
On the 9th of May, 1879, the following order was entered :
"On motion of plaintiff, by his attorney, this cause is dis-
missed." On next day, May 10th, the following order
was entered : "This day came the defendant W. M. Mc-
Claskey, who suggests that he has an interest in this suit,
and who has heretofore appeared herein, and moved the
court to set aside the order of dismission entered in this
cause on yesterday, and reinstate the same on the docket."
On May 8, 1880, the motion of defendant McClaskey was
continued. On July 13, 1886, defendants Brandon and
McClaskey having died, their deaths were suggested on the
record. On 19th October, 1886, the suit was ordered to
stand revived against their respective administrators as de-
fendants. On the 30th of October, 1886, on motion of
plaintiff and the administrator of McClaskey, the court
sustained the motion, and ordered the cause to be rein-
stated upon the docket. The cause had been omitted from
the docket from May term, 1879, to October term, 1886,

and the order of dismissal entered at May term, 1879, had never been formally or directly set aside.

The facts which led to this suit are as follows : Defendant Campbell had obtained a judgment against defendant Brandon. Brandon obtained an injunction to the judgment and gave an injunction-bond with defendants McClaskey and C. P. Thompson as his sureties. The injunction had been dissolved, and suit brought on the injunction-bond. Defendant Campbell had assigned the judgment and the benefit of the injunction-bond to plaintiff Glascock. C. P. Thompson had conveyed his house and lot in the town of Philippi to defendant Bradford, trustee, in trust for his wife, defendant Harriet S., and his infant son, defendant Eddie Thompson. All these plaintiff, Glascock, had made parties defendant to this suit—Campbell as his assignee ; Brandon, McClaskey, and Thompson as debtors in the injunction-bond ; Thompson as the party who had made to Bradford, trustee, the alleged fraudulent conveyance for the benefit of his wife and child. Defendant McClaskey had no interest except as a joint debtor, and to see that some or all of the liability should be made off his co-surety, C. P. Thompson.

Had the plaintiff at May term the right to dismiss his suit at his own cost ? The suit was not on behalf of plaintiff and others. It stood upon no order for acccount. No pecree had been entered in which outside parties could be interested. The taking of proof had not been commenced that might have been used in another suit. Plaintiff's motion to dismiss was for an unconditional dismissal. It was not asked to be without costs or without prejudice, or with leave to prosecute any new suit in equity or at law. Defendant McClaskey had established no claim against plaintiff, or against any co-defendant. Plaintiff's dismissal of his suit was therefore made as a matter of right, in the usual course ; and, so far from defendant McClaskey having any right to gainsay it, the plaintiff himself ought not to have been allowed to reinstate the cause, except during the term, and not then, except for cause shown. Plaintiff made no motion to set the dismissal aside, and no such order was formally entered. The term ended, and the

order of dismissal became a final order, and the cause a thing finally adjudged, unless the motion of defendant McClaskey had the effect to suspend or set it aside.

I do not think a plain order of dismissal on motion of plaintiff, in such a case, can be set aside by any such indirection, or be held to have been set aside. The effect of it was to ask the court to set it aside. The matter was in the power and under the advisement of the court during the term, and, when the court adjourned without setting aside the order, the effect was equivalent to overruling the motion of defendant McClaskey.

Could the court, after the lapse of seven years, and on mere motion, set aside the order of dismissal? Chapter 127, p. 795, Code, especially sections 8 and 11, gives the rule of practice, and defines the powers of the court in such cases after the term has ended. Section 8 provides that "any court in which is pending any case, wherein for more than four years there has been no order or proceeding but to continue it, may, in its discretion, order such case to be struck from the docket, and it shall thereby be discontinued. A court making such order may direct it to be published in such newspaper as it may name." Section 11: "Any Circuit Court may, on motion, reinstate on the trial-docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the non-appearance of the plaintiff within three terms after the order of dismissal may have been made or order of nonsuit entered." These two sections are a re-enactment, with modifications of section 8, c. 173, p. 718, Code Va. (1860).

Section 11 is not intended to relate to all orders and decrees of dismissal, for that would comprehend all orders and decrees in favor of defendants—those final, as well as those in terms without prejudice. It has plenty of subject-matter, without giving it any such unreasonable scope. It covers cases of discontinuance proper, which are often entered as orders of dismissal in form. Nonsuits are sometimes entered as dismissals. See sections 6, 7, c. 125, p. 781, Code. Section 7 provides that the clerk shall at rules, in certain cases, as for failing for three months to file bill, enter the suit dismissed.

So defendant McClaskey at no time showed any right on his part to have plaintiff's order of dismissal set aside, and if plaintiff had any such right after the end of the term, and he shows none, he came too late, in any view, with his motion. Some twenty terms had elapsed instead of three.

On the merits, apart from this question of practice, the material facts are as follows : Defendant C. P. Thompson sold a tract of land of two hundred and twenty six acres to Abraham Talbott for the sum of twelve thousand, four hundred and thirty dollars, the last payment, six thousand, four hundred and thirty dollars, to be paid 2nd March, 1871. His wife, the defendant Harriet S. Thompson, refused to join in the deed relinquishing her right of dower, until and unless her husband would agree to buy for her a house and lot in the town of Philippi. To this the husband agreed at the time of the execution of the deed. Accordingly husband and wife, by deed dated 1st March, 1868, conveyed the land to Talbott. This verbal contract between husband and wife, made or repeated at the time she signed and acknowledged the deed, is proved by the husband and wife, by the justice who took the acknowledgment, and by one other witness. So that there can be no reasonable question of the fact that the wife relinquished her contingent right of dower in the Talbott land upon the express agreement, then and there made by her husband, that he would buy for her a house and lot in the town of Philippi. A short time afterwards C. P. Thompson bought of Mrs. Elizabeth Jones the house and lot in controversy, and directed the deed to be made to his wife, but from some cause, not explained, Mrs. Jones, by deed dated September 9, 1868, conveyed the house and lot to C. P. Thompson, the husband. There is nothing in the record anywhere to show what was paid for the house and lot, or what, it was or is worth, except that plaintiff in his bill says "it was probably worth two thousand, five hundred dollars." This is not denied, but the owner in fee, Eddie Thompson, is an infant. Plaintiff's claim is based on an injunction-bond dated June 4, 1869, executed by Brandon, principal, and McClaskey and Thompson, sureties, to the state, use of

Campbell, in the penalty of two thousand dollars. The injunction was dissolved, and, on suit brought, judgment was rendered long after, to wit, on May 9, 1879, in favor of the State, at the relation and for the benefit of Campbell, for the use of plaintiff, Glascock, his assignee, against Brandon, McClaskey and Thompson, for one thousand, six hundred and ninety nine dollars and thirty four cents, as appeared by exhibit filed with depositions.

By the deed of September 19, 1870, defendant Thompson conveyed the Jarvis house and lot to Thomas A. Bradford, trustee, his heirs and assigns, to hold for the use of Thompson's wife and children. I here give the deed in full for it is the one important paper on this branch of the case, and can best speak in full for itself:

"This deed, made this 19th day of September, 1879, between C. Perry Thompson, of the first part, and Thomas A. Bradford, trustee, of the second part, witnessth: That for and in consideration of the sum of one dollar to the said C. Perry Thompson in hand paid by the said Thomas A. Bradford, trustee, the receipt whereof is hereby acknowledged, the said C. P. Thompson doth grant unto Bradford, trustee, with general warranty, the house and lot in which said Thompson now resides, situated on Main street, in the town of Philippi, and lying between the property of William McClaskey and Mrs. Angelina Byrn, being the same lot conveyed to said Thompson by Mrs. Elizabeth Jarvis by deed dated on the 9th day of September, 1868, to which reference is hereby made for a further description of said lot, containing one fourth of an acre, more or less; also the following personal property, viz.: three sets of chairs, one cooking-stove, six beds, bedsteads, and bedding, one parlor carpet, one buggy and harness, and one horse and wood rake, one bureau and five stand tables, and one dining table; to have and to hold the before-mentioned property, both real and personal, unto him, the said Thomas A. Bradford, trustee, his heirs and assigns, forever, upon trust, however, to secure to Harriet S. Thompson, wife of said C. P. Thompson, and the children of the said C. P. Thomson, and Harriet S., his wife, a comfortable support and maintenance; and it is further under-

stood and agreed, by and between the parties to this deed, that the said trustee shall permit the said C. P. Thompson and Harriet S., his wife, to live in and upon said house and lot, and to use and enjoy the personal property hereby conveyed, during the lives of the said C. P. Thompson and Harriet S., his wife, and the survivor of them, and after the death of the survivor, then the said property, both real and personal, be equally divided between the children aforesaid; but the said C. P. Thompson hereby expressly reserves the right to dispose of the said property by his last will and testament among the children aforesaid, if he shall desire to do so, in such manner and in such portions as he may choose, and, in default of such appointment by will, then said property shall be divided among the said children as aforesaid. Witness the following signatures and seals. C. P. Thompson. [Seal.] T. A. Bradford. [Seal.]"

The issues were made up, the infant answering by guardian *ad litem*, Thompson and wife denying all fraud and alleging that the settlement was made for her benefit in performance of an express promise of the husband, which induced the wife to relinquish her right of dower in the two hundred and twenty six acres conveyed to Talbott.

*Blanton* v. *Taylor*, Gilm. 209, was decided in November, 1820. It decides: "Provision in lieu of dower will not be disturbed as fraudulent, as far as it is only equivalent to dower." That case was preceded by *Quarles* v. *Lacy*, 4 Munf. 251, and by *Gosden* v. *Tucker's Heirs*, 6 Munf. 1, the latter holding that a parol agreement between husband and wife that, in consideration of her joining him in a conveyance of a parcel of her lands, he would purchase certain other lands *etc.*, for her, is good and enforceable in equity against his heirs. *Blanton* v. *Taylor* was followed by *Harvey* v. *Alexander*, 1 Rand. (Va.) 219 (1822,) which decides: "Where a deed is made in consideration of natural love and affection, and the further consideration of one dollar, parol proof may be admitted of other valuable considerations. * * A wife parting with her dower right in real property forms a sufficient consideration for a subsequent deed conveying other property for her benefit."

In *Taylor* v. *Moore*, 2 Rand. (Va.) 563 (1824,) the question was fully considered and discussed. The court held: "If a married woman relinquishes her dower in lands under a promise that other property shall be settled on her as a compensation, such settlement will be good, although made after the relinquishment;" (here five years after the verbal agreement) "but, if the value of the property settled exceeds the value of the dower relinquished, the deed should be set aside as to the excess and supported as to the residue."

In the case of *William & Mary College* v. *Powell*, 12 Gratt. 372–385, (1855,) the cases are discussed, and the doctrine re-affirmed. We may therefore conclude that the rule of law with us is that a post-nuptial settlement by the husband in favor of the wife, or wife and children made in pursuance of a fair and definite contract, by parol or otherwise, and for a valuable consideration, such as the relinquishment of dower actually made by the wife, will be held good against his general creditors; "and although it may have been made under such circumstances that it must be pronounced fraudulent and void as to the creditors of the husband, yet, if the wife has relinquished her interest in property on the faith of such settlement, it will be held good to the extent of a just compensation for the interest which she may have parted with; and this, though the settlement may have been made subsequent to the relinquishment.". LEE, J., in *William & Mary College* v. *Powell*, 12 Gratt. 385.

But even if the deed sought to be set aside should be regarded as one made on consideration not deemed valuable in law, the plaintiff did not bring his suit within five years and no actual fraud is proved; the suit is barred, for there can be no fraud in fact without a criminal intent. Concede the deed to be voluntary, then our statute makes it conclusively fraudulent as to plaintiff, a then existing creditor, and it can not be avoided for that cause only, unless suit be brought within five years after it is made. It was the only real estate Thompson then had, but not the only personal property; therefore the effect of the conveyance was to seriously impair the creditor's remedy, if not prevent

the collection of his debt. Therefore its necessary and direct effect was to delay, hinder and defraud his creditor. The law says that he shall be taken to intend what he does, and the natural or necessary consequences of his act. Can we, by taking these elements apart and putting them together again, say that we have pushed aside the statutory bar? What is there but the constructive fraud which the law implies, and under our statute conclusively implies? What fraudulent intent but what the law imputes? No such vicious intent appears as to make a case of actual fraud—fraud in fact.

And this brings us to the debtor's reservation in the deed of benefit to himself. If it appeared that the deed to Bradford, trustee, was on a secret trust, or was a mere cloak to hide it from his creditors, or a mere contrivance for his own personal benefit, then we should have a case of actual fraud, which the statutory bar would not protect; for this would be a falsehood—a thing calculated to deceive, a thing intended to cheat and circumvent creditors—and not expressly or impliedly comprehended in the making of the voluntary conveyance. When a man makes a voluntary conveyance he gets nothing in return, and its natural, ordinary, almost necessary effect is to impair to some extent the debtor's ability to pay, and to interfere with and break in upon the rights of the creditor. The law requires the debtor to be just before he is generous : hence it construes the act to be fraudulent, no matter what his personal intent in that behalf may have been.

The law imputes the intent to hinder, delay and defraud, and our statute makes it conclusively fraudulent as to then existing creditors, and therefore unlawful, but not for that reason only, and on that ground alone fraudulent in fact. To make it an actual fraud, some other element, no matter by what badge or token proved or made manifest, must be introduced; something not simply unlawful, but something which makes the transaction, as a whole, offensive to the common sense of right and wrong. If we do not keep in mind this distinction, then the old question of voluntary conveyances, which our statute intended to cut up by the roots, will be back upon us again in full force with all its

old vexations and perplexities; but more than that, the very wise and wholesome law prescribing the five years bar will be eaten away little by little, until after awhile all you will have to do to put it out of the way will be to dissect the ordinary volunteer conveyance, with its natural effects and imputed intent, put them together again in some other order, or dash in a feather's weight of something else, and the bar is gone.

The statute means what it says, and intends the qualification as to subsequent creditors and the five years bar as counterparts of the conclusive presumption. In some way, by some effective badge or token, fraud in fact, as distinguished from fraud merely constructive, something not merely unlawful, but also in its nature criminal, must be made distinctly to appear—something which justifies the natural inference of a design to deceive, cheat or circumvent his creditors. In this case the conveyance itself, the testimony and all the surrounding circumstances, which throw light upon the question, tend to show that there was no fraudulent design in fact; but the true character of the transaction appears upon the face of the deed itself, except that the valuable consideration moving from the wife is not recited; such executed relinquishment on the wife's part having, as was said above, furnished to this post-nuptial settlement the basis of a *bona fide* consideration deemed valuable in law.

Mrs. Thompson at the age of twenty three, relinquished her right of dower in the land, which then sold for twelve thousand four hundred and thirty dollars. The husband, quite dissipated, with limited expectation of life, was somewhere from twenty seven to thirty one years of age. There is nothing in the record which gives us any clue to the contract price of the house and lot in controversy. "The problem of determining the present value of the wife's contingent right of dower involves the chances of survivorship, as between husband and wife, based upon their age, the tables of mortality and the *calculus* of chances only professing to give average results in a vast number of cases; but they are liable to be greatly disturbed in any one given case by peculiarities of constitution, locality and other circumstances, to which, therefore, reference must be had, wherever a

practical result is sought.   The extent to which the average estimates ought to be changed by these peculiar circumstances is not susceptible of being defined, but must depend on the exercise of a sound discriminating judgment." 2 Minor, Inst. 179, 180, and cases cited.

Counsel for appellant in their brief have furnished us with their calculation and estimate of the value of Mrs. Thompson's contingent right of dower, giving her age as twenty three saying nothing about the age or peculiarities of the husband. They make it twenty *per cent.* greater than the probable value of the house and lot as stated in the bill. This I am sure is too much, leaving out of view the peculiar condition of C. P. Thompson, the husband. On this point we are left in the dark utterly. We are furnished with no *data* by which we can have it computed, even by the ordinary table; and, if we had the ordinary *data*, "so great is the difficulty of estimating the (fair, practical) worth of contingent dower rights, so uncertain and imaginary are the values which are the necessary elements of the computation, that the court will not enter into any nice or exact calculations on the subject, especially where there is nothing to show that the wife exacted anything unreasonable or unfair." See *Singree* v. *Welch,* 32 Ohio St. 320.

This settlement, so far as we can see, is *bona fide,* reasonable, and fair. The house and lot was conveyed to her as a substitute and equivalent for what really belonged to her, beyond the reach of any creditor, no matter how imperious or exacting his demands against the husband might be, intended to secure it to her in its new form as a home made safe from the vices or misfortunes of an improvident husband, and is to be supported according to the true intent and meaning of the instrument by which it is created. See 2 Kent. Comm. (13th Ed. by Barnes) top p. 165.

And this brings us to the instrument itself. I do not think this deed of settlement will bear a construction that would give C. P. Thompson a life-estate in an undivided half of the property. See *Johnston* v. *Zanes's* Trustees, 11 Gratt. 552. But the question whether defendant C. P. Thompson has any such interest as can be reached

by his creditors we do not deem it proper now to consider; no such question is presented by the pleadings, and the decree must be justified by the pleadings as well as by the proof. Regarding this conveyance as a *bona fide* settlement not of excessive value, as far as we can see, made in performance of the husband's express promise, and in consideration of the wife's relinquishment of her contingent right of dower in the land sold and conveyed to Talbott, we regard the decree complained of, entered on the 2d day of June, 1890, dismissing plaintiff's bill, as right, and the same is therefore affirmed.

AFFIRMED.