# CHARLESTON.

## McCue *et al. v.* McCue *et al.*

Submitted June 15, 1895—Decided Nov. 20, 1895.

1. VOLUNTARY CONVEYANCE—STATUTE OF LIMITATIONS—FRAUD IN FACT.

   The impeaching creditor, in order to set aside in whole or in part a voluntary conveyance procured to be made by the debtor husband to his wife, must, under our statute, bring his suit within five years from the execution of the conveyance, unless he shows that it was fraudulent in fact—that is, procured to be made with some dishonest intention; it is not enough to show it to be fraudulent in law, under the statute, by reason of being voluntary.

2. VOLUNTARY CONVEYANCE—FRAUD IN FACT—DISHONEST INTENTION.

   The same rule applies to a subsequent impeaching creditor. He also must cause it in some way to appear that the voluntary conveyance was made or caused to be made with some dishonest intention, by proving such additional circumstances as are sufficient to show fraud in fact.

   A case in which this doctrine is discussed and applied.

W. W. BRANNON for appellants:

I.—*Fraud to be proved by him who alleges it, but may be inferred.*—10 W. Va. 321; 10 W. Va. 87; 17 W. Va. 717; 29

W. Va. 441; 83 Va. 227; 23 W. Va. 644; 38 W. Va. 259.

II.—*Failure to testify a circumstance of fraud.*—23 W. Va. 639, 645; 36 W. Va. 654; 17 W. Va. 771; Bump. on Fraud. Conv. (3rd Ed.) 54.

III.— *When husband and wife parties to a contract, proof of good faith required when.*—11 W. Va. 122; 23 W. Va. 499; 24 W. Va. 199; 22 W. Va. 673; 24 W. Va. 405; 27 W. Va. 206; 29 W. Va. 441; 94 U. S. 580; 36 Pa. St. 410; Bump. on Fraud. Conv. 56, 57, 58 and 59.

IV.—*Conveyance fraudulent in fact, not barred by section* 14, *chapter* 104, *Code.*—10 W. Va. 321; 32 W. Va. 705; 12 Gratt. 363.

V.—*Fraudulent withholding deed from record, obstructed plaintiffs' right.*—3 Leigh, 789; 1 Leigh, 179; 6 W. Va. 168; 4 Leigh, 511; Wait on Fraud. Conv. & Creditor Bills, § 292; 76 Va. 679; 17 Gratt. 345; 13 Am. & Eng. Enc. Law, 680 and 727.

U. G. Young for appellees, cited Code, c. 105, s 14; 32 W. Va. 507; 36 W. Va. 11, 277; 10 W. Va. 321; 16 S. E. Rep. 364; 35 W. Va. 84, 91, 92, 93; 22 W. Va. 356; 33 W. Va. 624.

Holt, President:

Appeal from a decree entered by the Circuit Court of Upshur county on the 8th day of June, 1894, dismissing plaintiffs' bill, brought to set aside a deed as fraudulent.

The facts are as follows: By deed dated the 21st day of March, 1888, A. A. Houghton and wife sold and conveyed to defendant Margaret McCue, wife of defendant John W. McCue, a certain tract of land of eighty one acres, situate in Upshur county, at the price and for the sum of seven hundred and seventy five dollars, of which five hundred was paid, and for the remainder, two hundred and seventy five dollars, Mrs. McCue executed her notes, for which a vendor's lien was retained on the face of the deed. Houghton assigned the notes for the unpaid purchase money to Ebenezer Leonard, which, deducting credits, amounts to one hundred and ninety two dol'ars and sixty five cents, with interest from the 2d day of October, 1893, which is now in suit, and

about which there is no controversy. John W. McCue paid for his wife the five hundred dollars, leaving her to pay the deferred payment of two hundred and seventy five dollars. William B. McCue, the father of John W., died some time before the 24th day of January, 1885, leaving a will whereby he devised to John W. an interest in a tract of land, but charging it with the payment of a certain sum for the benefit of certain legatees.

On the 25th day of January, 1890, defendant John W. executed to C. F. McCue his single bill for one hundred and fifteen dollars, the last part of what he was to pay under his father's will. On this single bill the plaintiffs, as executors of C. F. McCue, brought suit before a justice, and on the 29th day of July, 1893, obtained judgment against John W. for the sum of one hundred and thirty nine dollars and fifteen cents and costs, which is the debt here sought to be enforced against the tract of land of eighty one acres.

Plaintiffs contend that this conveyance caused by the husband to be made to the wife is not only constructively fraudulent, but is fraudulent in law as being voluntary— that is, not upon a consideration deemed valuable in law— but, as against him whose debt had been contracted at the time the deed was made, that it was also an actual, positive, moral fraud, a fraud in fact, and therefore not barred in five years. The wife, on the other hand, answers and says, *inter alia*, that, conceding the deed to be voluntary, and the plaintiff to be a prior creditor, there is no other cause or ground for avoiding the deed, none except the cause of its being voluntary; and therefore plaintiff is barred because he did not bring his suit within five years after the deed was made, and also recorded, whatever bearing the fact of being also recorded may have. So that the question is, what fact appears which has the effect to show the deed to be fraudulent in fact, in addition to being fraudulent in law, because voluntary? Allegations of fraud in fact must be definite and specific as to time, place, manner, person, circumstance; so that the defendant may be able to meet the charge, and the court be able to determine the fact from the allegations and the proof, for the point of law to

be determined by the court must arise out of the case as alleged and proved.

The plaintiffs say, in substance, that the deed is voluntary—that is, in the language of the ·statute, upon a consideration not deemed valuable in law; that defendant John W. McCue, in the division of his father's estate, received a certain part, which he converted into money, and placed it in the name of his wife, the defendant Mrs. Margaret McCue, by buying, and paying five hundred dollars for the Houghton tract of land of eighty one acres, and causing it to be conveyed to his wife; that plaintiffs were prior creditors; that the debt for which they sue—first in the form of a note on the 25th day of January, 1890, now in the form of a judgment rendered on the 29th day of July, 1893—existed as a debt against defendant John W. McCue long before the making of the deed in question; that it was done by the husband with the fixed and deliberate purpose and design to delay, hinder, and defraud the plaintiffs out of their debt; and that the wife, Margaret McCue, had no separate estate, but took the land under the deed, paying nothing, and well knowing the fraudulent intent and purpose of her husband.

So the statute says that the deed is not simply *prima facie*, but conclusively, fraudulent in law, and therefore void as to this creditor, whose debt had been contracted at the time the deed was made—void not because it is fraudulent in fact, but because it is voluntary. But it shall not be avoided for the sole cause of being voluntary, and therefore conclusively fraudulent in law, unless, within five years after such deed was made, a suit be brought for the purpose of avoiding it; nor shall such voluntary conveyance, merely on account of being voluntary, and therefore conclusively fraudulent in law as to a prior creditor, be void as to your debt if it shall have been contracted after such deed was made; and, though it be decreed to be void as to such prior creditor, because voluntary, it shall not for that cause be decreed to be void as to the subsequent creditor. Paraphrase of section 2 of chapter 74, and section 14 of chapter 104, of the Code. See *Glascock* v. *Brandon*, 35 W. Va. 84-92 (12 S. E. 1102); *Greer* v. *O'Brien*, 36 W. Va. 277 (15 S. E. 74). Then follows the reasoning which

was resorted to before this statute. "Long experience has shown that the natural, ordinary, probable consequence of such voluntary conveyance is to delay, hinder, or defeat the collection of the existing debt. The party is presumed to intend what he does, and the natural, ordinary, probable consequences of his act. Therefore such act, as against such creditor, is either *prima facie* or conclusively fraudulent in law or in fact. Our statute comes in, and says that for five years it shall be held to be conclusively fraudulent in law. The plaintiff goes on. The legislature, it is probable, considered that the cases would be rare in which the statute could be successfully invoked against the demands of creditors; for if the donor was considerably indebted at the time, or if the gift was grossly disproportionate to his means, leaving but a scanty proportion for payment of his debts, the presumption of the actual fraud would almost necessarily arise." *Bickle* v. *Chrisman*, 76 Va. 678-684. "The fraudulent intent of the husband and wife, if it be not expressly declared, is concealed in the bosom of the parties engaged in the transaction, and can be inferred only from the circumstances of the case. The presence of no other consideration for the conveyance than beneficence to the wife manifests the activity of those motives which most strongly excite dishonesty towards creditors, and may be regarded as the usual attendants of the fraudulent transaction. That circumstance combined with the equitable and legal preference of creditors over volunteers should have great influence in determining upon the fairness or dishonesty of the conveyance. It furnishes a presumption of *mala fides* which requires the most conclusive and satisfactory evidence of innocent intention to counteract it. Unless every suspicion of dishonest purpose be clearly disproved, it would seem entirely just to leave the conveyance to that condemnation under the statute, which presumption, arising out of a merely good consideration, ought to draw down upon it." See 2 Lomax. Dig. 427. And the *mala fides* being thus shown, whether the actual fraudulent intent relate to existing creditors, or (as it may) be directed exclusively against subsequent creditors, the effect is the same; and the subsequent creditor may, upon the strength

of it, successfully impeach the conveyance. See *Johnston*
v. *Zane*, 11 Gratt. 552, 560.

That an illegal act was intended injurious to the credit-
or, and to that extent immoral, there can be no question;
and yet it is distinguishable from a dishonest intention to in-
jure the creditor. Thus it appears that by our statute,
want of a consideration deemed valuable in law is a badge
of fraud as against a subsisting prior creditor, of conclusive
effect. Such volunteer will not be heard to say that the
conveyance of this real estate was not procured to be made
by the husband with intent to delay, hinder, or defraud
his creditor. The presumption of such intent may not be
rebutted, but the creditor's right resulting therefrom may
be barred. Upon what ground, with what motive, for
what purpose, and in favor of whom? Upon the ground of
the presumption being made conclusive, the necessity arises
as the dictate of public policy, which looks to the quieting
of titles, that some limit should be fixed to the bringing of
such suit; not for the donor, the remedy against whom is
left open and undisturbed, but for the donee; that her right
of property may be no longer open to question or her right
to possess, improve, and enjoy be put in jeopardy. Surely,
the statute is a wise one. And I think it would be better
by amendment, for it to be made to apply to all cases, than
have it frittered away—made worse than nugatory—by the
construction and effect here sought to be given it. The
statute says that all voluntary conveyances shall be held to
be followed by the consequence of delaying and hindering
the creditor whose debt has been contracted at the time the
conveyance was made, and that the grantor shall be con-
clusively presumed to have intended such natural and prob-
able consequences of his act. And, as the grantee parted
with no value in consideration thereof, it makes no differ-
ence whether she had notice or not of such fraudulent in-
tent; she stands in place of, and on no higher ground than,
the grantor. For a discussion of the subject, see *Huston* v.
*Cantril*, 11 Leigh, 136; *Hunters* v. *Waite*, 3 Grat. 36 (which
led to the enactment of the statute); *Wilson* v. *Buchanan*,
7 Gratt. 334; *Bickle* v. *Chrisman*, 76 Va. 678, 684; *Snoddy* v.
*Haskins*, 12 Gratt. 363; *Jenkins* v. *Clement*, 1 Harp. Eq. 72

(14 Am. Dec. 698, 703) note; especially *Lockhart* v. *Beckley*, 10 W. Va. 87, and *Greer* v. *O'Brien*, 36 W. Va. 277, (15 S. E. 74). See, also, *Himan* v. *Thorn*, 32 W. Va. 508 (9 S. E. 930); *Glascock* v. *Brandon*, 35 W. Va. 84 (12 S. E. 1102,) and *Humphrey* v. *Spencer*, 36 W. Va. 11 (14 S. E. 410).

What additional fact going to make out fraud in fact is made to appear? (1) The deed remained unrecorded from the 21st day of March until the 2d day of November, 1888. The answer of the wife to this is that, as is usual among people living in the country, who rarely go to the county seat, the recordation was neglected for seven months; there was nothing to make necessary the speedy recordation; certainly no fraud was intended by such mere neglect. (2) Mrs. McCue had no separate estate. This she denies, but what bearing could it have upon the question of a conveyance conceded to be in part voluntary? (3) The plaintiffs say that they are informed that the said John W. McCue was considerably indebted to various persons on the 21st day of March, 1888. The general rule of equity pleading is that such information as the pleader puts so little faith in himself as to be unwilling to allege to be true amounts to little or nothing. See Story, Eq. Pl. (10th Ed.) § 241, note. But she answers and says there was none, and none appears, except that of the plaintiffs, which is, for the present only, taken to be a pre-existing debt. (4) Neither she nor her husband came forward and testified. The bill is sworn to. She swears to her answer, in which she calls for full and strict proof of certain facts, but she admits that the deed was voluntary as to five hundred dollars. What would plaintiff have her testify about? She had held the land continuously under her deed for more than five years before the institution of this suit. That clearly appears without her testimony. The rule is that he who alleges fraud must prove it [*Greer* v. *O'Brien*, 36 W. Va. 277 (15 S. E. 74)]; and none of the supposed exceptions to this rule exist in this case. She answers, and calls for strict proof of every allegation, except those specifically admitted; and among them she calls for proof that this debt of plaintiffs was an existing debt at the date of her deed, which she denies.

The will of the father, William B. McCue, who died in 1885, imposes no liability of any kind on his son John W. McCue in favor of his brother C. F. McCue, whose representatives the plaintiffs are. He gave two daughters and a son each a legacy of five hundred dollars; directed his personal property to be sold, and his debts to be collected, to pay the same, and the surplus to be divided among his eight children; but if not sufficient to pay the three legatees, then he required each one of his five sons, including C. F. and John W., to pay in equal amounts what might be necessary to liquidate any such deficiency, and he adds: "My son Wm. C. McCue and my two daughters having got no land, I want those who got land to pay the money." Although the debt here sued on had its origin in this will, it would be going a long way to say that John W. owed it to his brother C. F. on the 21st day of March, 1888. My conjecture would be that C. F. McCue had not paid for his brother John W., to the legatees, this sum of one hundred and fifteen dollars almost two years before the giving of the note, on the 25th day of January, 1890. If due to any one on the 21st day of March, 1888, it is more likely that it was due and owing to the legatees, and was paid or agreed to be paid by C. F. about the date of the note. A note itself does not import a debt existing previous to the period of execution, but its effect is to give the debt and the note a contemporaneous origin. *Johnston* v. *Zane*, 11 Gratt. 552. At any rate, there is nothing to carry the debt as a debt against John W. in favor of C. F. back to a period almost two years prior to the date of the note. But, conceding the debt to be a subsequent one, the same argument could be made as was made to meet and repel the bar of the statute. Does he contemplate contracting no other debts? If so, why did he contract this one. He intended what he did, and its natural and probable consequences, which have been to delay, hinder, and defraud this subsequent creditor. We must judge the inward intent by outward conduct; we have nothing else to go by. Therefore the causing the deed to be made to the wife was a mere pretense—a device to shield it from creditors. He paid for the property. Does he not live upon it, use it, enjoy it, as fully as if it

were standing in his own name? He is the real owner. The wife is a mere trustee, invested with the legal title for the secret use and benefit of the husband, who paid for it; and the question of the five years bar and of subsequent creditors has no application whatever. To this the one sufficient answer is that in such case the law does not raise in favor of the husband, against the wife, a resulting trust. The relationship between the parties repels such presumption. See *Smith* v. *Strahan*, 16 Tex. 314; Flint, Trusts, § 75; *Dickinson* v. *Davis*, 43 N. H. 647; *Edgerly* v. *Edgerly*, 112 Mass. 179. Both defenses stand upon the common ground that plaintiff, to make out his case, must prove fraud in fact. When the five years have come and gone, in the twinkling of an eye the legal aspect changes. The one may have lost his remedy; the other certainly has acquired a new and different right. Before, she was a volunteer, unfavored; now, she occupies in effect, if not in fact, the vantage ground of a purchaser for value without notice, according as the fact of notice may be made to appear.

As we have already said, like all its fellows where we find it, this statute also is a statute of repose, intended to quiet titles, give peace, freedom from litigious vexation; otherwise, we make it by construction nugatory, and rob it of its only purpose. Unless notice of the debtor's actual fraudulent intent, if any, of his dishonest intention, or complicity therein, be in some way brought home to the wife, the creditor may no longer go against this land of the wife. The lawmakers gave the creditor a plain and sure remedy, but upon the express condition that he brings his suit within five years before the grantee became a *quasi* purchaser for value. This case is merely one of a large and common class, in which the voluntary conveyance has no immorality in it, except the illegality of delaying and hindering creditors in some degree; not from dishonest intent, but from not observing the requirement of the law that he must be just before he becomes generous--a class it was the evident intention of the statute to protect. Here the wife has in good faith mingled her money and her labor with this land in building up a home during these five years, and to take it from her on no other ground than that it was illegal in

its inception, because voluntary, and might delay and hinder creditors, is to deny her protection under a statute the sole purpose of which was to give protection in such cases, and take away her home without her fault.

Decree affirmed.